# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUNA GAMING – SAN DIEGO LLC,<br><br>                                    Plaintiff,<br>    vs.<br><br>DORSEY & WHITNEY, LLP., HOLLAND & KNIGHT LLP, ET. AL.,<br><br>                                    Defendant. | CASE NO. 06CV2804 BTM (WMC)<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT |

In this action, Plaintiff Luna Gaming[1] has filed suit against various law firms and attorneys including Dorsey & Whitney ("Dorsey"), Holland & Knight ("Holland"), and Philip Baker-Shenk ("Baker-Shenk")[2], alleging causes of action for professional negligence, negligent misrepresentation and breach of fiduciary duty. Defendants Dorsey and Holland move for summary judgment on these claims arguing, *inter alia*, that it did not in fact represent Plaintiff and did not have an attorney-client relationship with Plaintiff.

**FACTUAL BACKGROUND**

---

[1] Luna Gaming was originally named Action Gaming. Thomas Celani, the owner of Action Gaming changed the entity's name to Luna Gaming on June 29, 2001. Throughout this motion, this gaming entity will be referred to as Luna Gaming. (DUF 4)

[2] The Defendants named in this suit also include (1) James Townsend, a Dorsey attorney; (2) Philip Baker-Shenk, a former Dorsey attorney who joined the Holland firm; (3) Bradley Grant Bledsoe Downes, a former Dorsey attorney who joined the law firm of Bledsoe Downes & Rosier; and (4) Bledsoe Downes & Rosier.

A.    Overview

Thomas Celani ("Celani") is a sophisticated business man who owns several other gaming entities aside from Luna Gaming. (Celani Decl. ¶¶ 2-3; Oegema Decl. ¶¶ 35-52) On March 27, 2000, Celani formed Plaintiff Luna Gaming for the purpose of entering into a gaming venture with the Ewiiaapaayp Tribe (the "Tribe"). (DUF 3) On March 29, 2000, Plaintiff and the Tribe entered into an agreement to cooperatively build a casino on Tribe-owned land in the San Diego area (the "Project"). (DUF 11) The Tribe was represented by Defendant Dorsey & Whitney ("Dorsey") prior to and throughout the course of the Project. (DUMF1) To complicate matters, Dorsey had also previously represented various Indian gaming projects owned by Celani such as Sodak Gaming and the Manistee project starting in 1995. (Celani Decl. ¶¶ 2-3)

Several years later, after Plaintiff and the Tribe failed to build the casino according to the Project plans, Plaintiff brought the instant suit against Dorsey as well as other law firms and attorneys complaining of professional inadequacies and misrepresentations made in the course of the attorneys' representation. Plaintiff alleges that Dorsey had a joint representation relationship with both Luna Gaming and the Tribe while Dorsey denies that any such attorney-client relationship existed and contends that Dorsey only represented the Tribe with respect to the Project. Whether this attorney-client relationship between Plaintiff and Dorsey existed forms the crux of the instant motion for summary judgment.

B.    Events Prior to the Formation of the Project

James Townsend ("Townsend"), a partner at Dorsey, has represented the Ewiiaapaayp Band of Kumeyaay Indians (the "Tribe") since 1997. (DUF 1) Before Plaintiff entered the picture in late 1999, Townsend represented the Tribe in its attempt to contract to build a casino with other business entities.

Plaintiff alleges that Celani had communicated to Dorsey his interest in Indian gaming opportunities in California in late 1999 and that Dorsey had provided him a memo on the legal status of Indian gaming in California. (PUF 170-172) Plaintiff concedes however that

Townsend had not been engaged by or requested by Celani to investigate Native American gaming opportunities for Plaintiff or Celani. (PNOL, Ex. 1 Celani Depo.128-129) Celani testified that, in January of 2000, Townsend called him to "sell him" on the gaming opportunity offered by the Tribe. (PNOL, Ex. 1 Celani Depo. 156-160) According to Plaintiff, Townsend made several representations regarding the ease and speed with which this proposed Project could be consummated. (Id.)

It is undisputed that Celani knew from the outset of his communications with Townsend that Townsend (and therefore, Dorsey) represented the Tribe with regard to this gaming opportunity. (PNOL, Ex. 1 Celani Depo. 161) Plaintiff also concedes that Townsend did not state that he or Dorsey would represent Celani or any Celani-formed entity with regard to the gaming opportunity offered by the Tribe. (Id.) Plaintiff only alleges that Townsend at no point explained that Dorsey could not represent Celani in this venture or explain any conflicts of interest that would exist with such a joint representation. (Id.)

Don Buch, a consultant working for Celani, apparently also had contact with James Townsend in January of 2000 regarding the possible venture with the Tribe. In two memos dated January 11, 2000 addressed to Celani, Buch set forth details regarding the possibility of a deal with the Tribe. (DNOL Ex. V) In one of these memos, Buch noted the fact that Dorsey represented the Tribe and therefore could not represent Celani on this deal by stating "we obviously can't use Dorsey as counsel – any other ideas?" (DNOL Ex. V, p. 488)

Celani flew to California to meet with the Tribe in January of 2000. (PUF 183) Both Celani and a competing investor, First Nation Gaming, submitted proposals to the Tribe and the Tribe initially chose First Nation Gaming. (PUF 185) In March 2000, Townsend contacted Celani again to tell him that First Nation Gaming had backed out of the Project. (PUF 186) Townsend allegedly told Celani during this conversation that the Tribe wanted a deal immediately and made further representations about the time in which such a venture could be completed . (PUF 187) In March 2000, Celani entered into a letter of intent to enter into the Project with the Tribe. (DNOL Ex. BB)

C.     Project Formation and Delay Caused By Opposition to the Project

On March 27, 2000, Celani formed Luna Gaming, the entity that would enter into the Project with the Tribe, with the legal assistance of the law firm of Dykema Gosset. (UF 3) Celani also retained the law firm of Dykema Gossett to represent Luna during the negotiation, preparation and execution of the agreements between the Tribe and Luna Gaming regarding the Project ("Project Agreements"). (UF 26) Shortly after the Project Agreements were signed, Jim Oegema, an associate at Dykema, became general counsel for Luna Gaming. (PUF 197)

The Project Agreement, which was signed on March 29, 2000, documented the plan to develop a gaming facility on land that was owned by the Tribe but leased to the Southern Indian Health Council. (DNOL Ex. B &C)  At this point, the Tribe had already obtained an agreement from SIHC to relinquish the lease in exchange for building a new health facility elsewhere. (DNOL Ex. A)  The Project Agreements provided for a Business Board, a joint decision-making entity comprised of representatives from Plaintiff and the Tribe, to make decisions on the development process and to approve Project costs such as attorneys' fees. (DNOL Ex. B &C)  The Project Agreements also specified that Plaintiff would pay the Tribe's attorneys fees for the work performed on the Project. (Id.)

Starting in April 2000, shortly after the parties entered into the Project Agreements, the neighboring Viejas tribe began to oppose the Project by levying legal challenges to the Project plans. (DUF 64)  The Viejas tribe succeeded in stalling the Project for over three years. In September of 2003, Plaintiff abandoned its original plan of building a casino on the land leased by the SIHC and began pursuing a joint venture between the Viejas and Ewiiaapaayp Tribe. (DUF 65) The joint venture plan failed due to a change in Viejas tribal leadership and inability to pass the needed Congressional legislation. (DNOL Ex. GG, Oegema Depo. 298.)  Plaintiff has since ceased funding the Project and discontinued its relationship with the Tribe.

D.     Dorsey's Interactions With Plaintiff For the Duration of the Project

Townsend was the lead billing attorney on this Project until 2001 when he retired. Philip Baker-Shenk ("Baker-Shenk") began working on the Project in late 2000 or early 2001 to assist with the process of obtaining regulatory approval and lobbying government officials. (HUF 23)

It is undisputed that Plaintiff and Dorsey never executed a retention or engagement letter memorializing an agreement that Dorsey (or any Dorsey attorney) would represent Plaintiff. (DUF 22) Also, formal documentation submitted by Plaintiff and the Tribe to government agencies such as the NICG identify Dorsey as attorney for the Tribe and Oegema as attorney for Luna Gaming. (DNOL Ex. J, p.311))

Plaintiff alleges that despite this lack of documentation evidencing an attorney-client relationship, Dorsey attorneys conducted themselves as Plaintiff's attorneys prior to and throughout efforts to implement the Project Agreements. Plaintiff alleges that Dorsey first initiated an attorney client relationship by contacting Celani regarding the gaming opportunity offered by the Tribe and making representations regarding this Project. After the Project Agreements were executed, Plaintiff alleges that Dorsey continued to act as Plaintiff's attorney by providing legal advice for Plaintiff's benefit on Project-related matters and non-Project related matters. Plaintiff further alleges that throughout the Project, Dorsey acted as counsel for Plaintiff by sending memoranda including legal advice jointly to Plaintiff and the Tribe and including Plaintiff in memoranda circulated to the Tribe marked "Privileged and Confidential" and "Attorney Work Product." According to Plaintiff, Plaintiff directed the work of Dorsey attorneys on the Project and paid for the legal fees generated by Dorsey attorneys pursuant to the Project Agreement.

Prior to entering into the Project Agreements, Plaintiff retained Akin Gump for what it calls a "second opinion" on the advisability of entering into the Project with the Tribe. (DOL Ex. Z, p.524-528) Throughout the Project, Plaintiff retained additional counsel for issues in connection with the Project such as California corporate law issues, public relations services, advice regarding slot machine licences, and interaction with the Bureau of Indian Affairs. (PUF 249) During the Project, Dorsey also continued to represent other entities

owned by Celani on Indian gaming issues. (PUF 254-271)

### C. Philip Baker-Shenk Leaves Dorsey

In or around June 2003, Philip Baker-Shenk informed his partners at Dorsey that he would be leaving to join a competing law firm, Holland & Knight. (PUMF 220) In that same month, Mark Jarboe, one of the Dorsey attorneys working on the Project, called for a private meeting with Celani and Oegema in Las Vegas. (PUMF 218-220) During this meeting, the attorneys discussed the strategy for obtaining a partner for Plaintiff to help bear the financial burden of Project costs. (UMF 220) Plaintiff and the Dorsey attorneys also discussed the fact that the Project was not moving forward under Baker-Shenk's leadership and planned to replace Baker-Shenk as lead attorney for the Project. (UMF 220; PNOL Ex. 6 Oegema Depo. 258, 261)

On September 15, 2003, Dorsey sent a letter addressed to Celani (rather than Plaintiff) notifying him that Baker-Shenk was leaving Dorsey and providing the following options: (1)"to be represented as to all matters by Philip Baker-Shenk and his new law firm of Holland & Knight"; (2) "to be represented as to all matters by the law firm of Dorsey & Whitney"; or (3) "to be represented by each firm as to certain matters." (PNOL Ex. 28 &29) Celani chose the third option stating that he wishes to be represented by Baker-Shenk on the Project as well as other unrelated gaming projects. (Id.)

Baker-Shenk formally left Dorsey on September 17, 2003 and began his employment with Holland approximately one week later. (HUF 55) After joining Holland, Baker-Shenk resumed his work for the Tribe upon securing a written Conflict Waiver and Consent Agreement from Plaintiff in December of 2003. (HUF 62; PNOL Ex. 40) The cover letter to the conflict waiver explicitly stated that Baker-Shenk and Holland would represent <u>the Tribe only</u> as follows: Holland "will not undertake in the future any specific representation of Luna Entertainment in gaming project matters that are related to those now or to be undertaken by the Tribe." (PNOL Ex. 40) In this conflict waiver, Plaintiff consented to Holland's representation of the Tribe despite another Holland attorney's previous representation of

Plaintiff with regard to the Project. (Id.)  Plaintiff also acknowledged that it has periodically sought representation from Holland on matters unrelated to the Project in the past and could reasonably expect representation in the future on matters "unrelated to the joint development" between Plaintiff and the Tribe.  (Id.)

## DISCUSSION

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment when there is no genuine issue as to a material fact and the moving party is entitled to a judgment as a matter of law.  A "genuine issue" is one where, based on the evidence presented, a fair minded jury could return a verdict in favor of the nonmoving party on the issue in question.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In considering a motion for summary judgment, the Court must examine all of the evidence in the light most favorable to the non-moving party.  United States v. Diebold. Inc., 369 U.S. 654, 655 (1962).

Defendants Dorsey and Holland request summary judgment on Plaintiff's claims for professional negligence and breach of fiduciary duty on the ground that Plaintiff cannot establish the existence of an attorney-client relationship with Dorsey.  Dorsey also requests summary judgment on Plaintiff's claim for negligent misrepresentation on the grounds that 1) Plaintiff lacks standing to sue for misrepresentations made prior to its formation; 2) several of the alleged statements are either true or unactionable statements of opinion; and 3) Plaintiff's could not reasonably have relied on Defendants' representations when Defendants were not acting as their attorney.  In the alternative, Defendant Dorsey requests that all Plaintiff's claims be limited in scope to complaints prior to September 2003 because no breaches or misrepresentations are alleged after that time frame.  Additionally, Defendant Holland and Baker-Shenk contend that Plaintiff's claims against Baker-Shenk, and therefore, Holland, are time-barred.[3]

---

[3] Defendants Holland and Baker-Shenk also make an argument that Plaintiff should be estopped from arguing that Dorsey was its attorney because (1) Plaintiff attested to being in compliance with all Indian gaming laws and the alleged joint representation would have been in violation of such laws; and (2) Plaintiff approved representations to third parties that Dorsey was the Tribe's attorney. The Court concludes that Defendants cannot invoke

A.      <u>Dorsey Did Not Represent Plaintiff Prior to the Project Agreements</u>

Because the relationship between Plaintiff and Dorsey changed dramatically once Plaintiff entered into the Project Agreement with the Tribe, the Court will analyze separately whether an attorney-client relationship existed prior to the Project Agreement and after the Project Agreement. For the time period prior to the Project Agreements, the Court concludes that Plaintiff has failed to raise a triable issue of fact on whether Dorsey represented it.[4]

An attorney-client relationship can only be formed through an express or implied contract for representation. <u>Fox v. Pollack</u>, 181 Cal. App. 3d 954, 959 (1986). Where there is no express contract, courts have focused on whether it "would have been reasonable, taking into account all the relevant circumstances, for the person who attempted to invoke the joint client exception to have inferred that she was in fact a "client" of the lawyer." <u>Sky Valley Ltd. Partnership v. ATX Sky Valley , Ltd.</u>, 150 F.R.D. 648, 651 (N.D. Cal. 1993) <u>citing</u> <u>Responsible Citizens v. Superior Court of Fresno County</u>, 16 Cal. App. 4th 1717, 1733 (1993).

> In most cases where there is a dispute about whether an attorney-client relationship was formed there will be no express contract, so resolution of the dispute will turn on whether a contractual relationship was formed implicitly. . .. While the subjective

---

equitable estoppel against Plaintiff because Defendants do not allege to have relied on these misrepresentations without knowledge that they were false. <u>See</u>, <u>e.g.</u>, <u>Santa Maria v. Pacific Bell,</u> 202 F.3d 1170, 1176 (9th Cir. 2000) )(equitable estoppel requires the injured party's actual and reasonable reliance on the representations of the party to be estopped.) The Court also concludes that principles of judicial estoppel do not appear to apply in this case because Defendants do not allege that Plaintiff took one position before a prior tribunal and not seeks to gain an unfair advantage by changing that position. See <u>Gagne v. Zodiac Maritime Agencies, Ltd.</u>, 247 F. Supp. 2d 1144, 1148 (S.D. Cal. 2003).

[4]    Defendants argue that Luna Gaming lacks standing to sue for misrepresentations made to Celani prior to its formation. The Court disagrees with Defendant's argument that Plaintiff lacks standing to sue for misrepresentations made to Celani prior to its formation. Even though Defendant is correct that Celani and Luna Gaming are legally separate entities, Plaintiff has standing to sue because it suffered injury as a result of Defendant's alleged misrepresentations. If Plaintiff's allegations are true, Plaintiff was wrongly induced to invest its money and resources in the Project as a result of Defendants' misrepresentations to its one and only member, Celani. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-561 (1992)(standing where a Plaintiff suffers injury in fact as a result of the Defendants' actions and this injury can be redressed by the payment of damages.) Plaintiffs have offered no support for the proposition that a corporate entity cannot sue for injury suffered as a result of misrepresentations made to one of its members.

> views of both the party and the lawyer may be relevant, they are not dispositive. In fact, subjective views that are deemed clearly unreasonable, after consideration of all the pertinent circumstances, become, as a matter of law, irrelevant." Id.

Some of the relevant factors that courts may consider in determining the reasonableness of a party's belief that an attorney-client relationship existed include: (1) whether the lawyer was paid for its services; (2) the magnitude of the interests involved; (3) whether the party had access to other lawyers; and (4) the relative sophistication of the party involved. Sky Valley, 150 F.R.D. at 652.

Here, the Court finds that the undisputed facts establish that Celani did not have reasonable grounds to believe that Dorsey represented Celani or any gaming entity that Celani was contemplating forming in the time period prior to the execution of the Project Agreements. Celani alleges that he believed Townsend was acting as Celani's attorney because (1) Townsend and Dorsey had previously represented Celani's gaming entities; and (2) Townsend approached Celani and conveyed information regarding the possibility of a gaming venture with the Tribe. (PNOL Ex. 1, Celani Depo. 152-157) Celani's subjective belief that Townsend represented him, however, is unreasonable in light of the circumstances leading up to the Project formation.

Celani admits that even though Celani had previously expressed an interest in California gaming opportunities, Townsend had not been engaged by him to scout out specific opportunities for Celani. (PNOL, Ex. 1 Celani Depo.128-129) Celani also admits that he was aware that Townsend was acting as the attorney for the Tribe when Townsend first allegedly contacted him regarding the Project. (PNOL, Ex. 1 Celani Depo. 161) Celani, therefore, would not have reason to believe that Townsend purported to represent him when Townsend, presumably acting on behalf of the Tribe, called to "sell him" on the Tribe's gaming opportunity. (PNOL, Ex. 1 Celani Depo. 160) In fact, Celani's choice of words in describing Townsend's conversation with him is telling – the only reasonable interpretation of Townsend's communication is that Townsend was "selling" the Project on the Tribe's behalf rather than advising Plaintiff on its own behalf.

In reaching this conclusion, the Court notes that Celani is a sophisticated business

man who owns several gaming entities represented by Dorsey as well as other law firms and therefore is experienced with legal representation. (Celani Dec. ¶¶ 2, 3; PNOL Ex. 1 Celani Depo. 102)  Celani concedes that Townsend never represented that he (or Dorsey) would represent Celani or any related entity with regard to the offered gaming opportunity.(PNOL, Ex. 1 Celani Depo. 161)   Knowing that Townsend already  represented the Tribe, it would be unreasonable for a sophisticated businessman experienced in legal representation to assume that Townsend was also acting as his attorney without express assurances to that effect.

Given Celani's knowledge that Townsend was acting as the Tribe's attorney, Dorsey's past history of representing other Celani-owned entities and the fact that Townsend approached Celani with the Tribe's offer, Celani's belief that Townsend was acting as his attorney was not reasonable.  Plaintiff offers no other support for a reasonable belief that an attorney-client relationship existed such as evidence that Townsend and Dorsey billed Celani for its advice regarding the gaming opportunity offered by the Tribe.  In fact, Don Buch, Celani's agent, demonstrated a belief that Dorsey *was not and could not be* Plaintiff's attorney during this time frame because of its representation of the Tribe. (DNOL Ex. V, p. 488)  Moreover, Plaintiff does not dispute that he obtained independent legal counsel from Akin Gump regarding the viability of the Project rather than relying solely on Townsend's representations (DNOL Ex. Z, pp.524-528) and also retained Dykema Gossett as separate counsel to represent it during the negotiation and drafting of the Project Agreements. (Celani Decl. ¶ 17)

For the reasons set forth above, Plaintiff has failed to raise an issue of fact as to whether it reasonably believed that Dorsey was its attorney prior to the execution of the Project Agreements.  Because the Court concludes that no attorney-client relationship existed between Dorsey and Plaintiff, the Court GRANTS partial summary judgment on Plaintiff's claims for professional negligence and breach of fiduciary duty[5] to the extent that

---

[5] Plaintiff appears to base its claim for breach of fiduciary duty on the existence of an attorney-client relationship between it and Dorsey. (Plaintiff's Opp. at p.24)  Although Plaintiff is correct that attorneys can under certain circumstances owe an independent duty

they are based events prior to March 29, 2000 when the Project Agreements were executed.

B.      Dorsey's Representation of Plaintiff During the Course of the Project

As set forth above, the Court finds that Plaintiff has failed to raise an issue of fact on whether Dorsey represented it during the time period prior to the execution of the Project Agreements. Based on the evidence submitted, the Court finds that Plaintiff has raised an issue of fact as to whether Dorsey acted as its attorney <u>after</u> the execution of the Project Agreements.

As the <u>Sky Valley</u> court explained, the dispensing of legal advice is not sufficient to establish an attorney-client relationship in a joint representation context. 150 F.R.D. 648, 651. In addition to the factors set forth above, where a joint representation is alleged, the Court must carefully consider the specific relationship between the two allegedly represented parties, analyzing factors such as: (1) the conduct of the parties toward one another; (2) the terms of any contractual relationship between the two parties; (3) whether and to what extent there was separate and private communication between the attorney and either of the allegedly represented parties; (4) the extent and character of common interests between the allegedly jointly represented parties; and (5) the extent to which either party communicated privately with other lawyers. <u>Id.</u> at 652-653.

In deciding this issue, the Court has taken into account the cooperative nature of the Project undertaking, the considerable common interests between the Tribe and the Plaintiff in the implementation of the Project, and the fact that the Project Agreements provided for joint decision-making by Plaintiff and the Tribe through the Business Board. The Court notes that such a cooperative undertaking would naturally entail the sharing of much legal and confidential information between Plaintiff and the Tribe's lawyers without necessarily creating an attorney-client relationship between them. However, after examining the evidence

---

of care to non-client third parties, it provides no support that Dorsey would owe a *fiduciary* duty to Plaintiff independent of an attorney-client relationship. Although Plaintiff appears to argue that a fiduciary duty can be created by virtue of a confidential relationship between the parties, the Court finds that Plaintiff has not offered evidence raising an issue of fact as to whether such a confidential relationship existed for the reasons set forth above.

submitted by Plaintiff, the Court finds that a reasonable trier of fact could conclude that Plaintiff reasonably believed that Dorsey represented Plaintiff and the Tribe jointly for the duration of the Project Agreements for the following reasons.

First, Dorsey attorneys circulated communications to both the Tribe *and Plaintiff* marked "CONFIDENTIAL ATTORNEY CLIENT PRIVILEGED INFORMATION" (PNOL Ex. 21 p. 475)  Second, Plaintiff's evidence may establish that Dorsey provided legal advice specifically for Plaintiff's benefit and that such advice was not required by or envisioned in the Project Agreements.  In addition to general strategy and legal update memos which would be encompassed by the joint decision making structure created by the Project Agreement, Dorsey appears to have advised Plaintiff on how to specifically implement its responsibilities related to the Project as follows: (1) Dorsey provided Plaintiff legal advice on how to comply with NICG requirements regarding background checks  (PNOL Ex. 20, pp. 464-467); (2) Dorsey aided Plaintiff in obtaining licenses (Oegema Decl. ¶ 10);  (3) Dorsey provided Plaintiff with advice on the legal intricacies and filing requirements involved with lobbying and making political contributions (PNOL Ex. 19. pp. 450, 452, 457, 459 and Ex. 38); (4) Dorsey appears to have aided Plaintiff in finding potential financial partners for the Project  (PNOL Ex. 22) and (5) Dorsey appears to have advised Plaintiff on its business plan (PNOL Ex. 18, p.434).  Finally, Celani,  the sole member of Plaintiff Luna Gaming, appears to have explicitly communicated an understanding that Plaintiff was represented by Dorsey with regard to the Tribe. (PNOL Ex. 28) Upon being informed that Philip Baker-Shenk was leaving Dorsey for Holland, Celani communicated to Dorsey that he wished Philip Baker-Shenk  to <u>continue</u> to represent him with regard to the Project with the Tribe as well as other unrelated matters.  (<u>Id.</u>)

Based on the evidence identified above, the Court concludes that a reasonable jury could find that Plaintiff and Dorsey did have an attorney-client relationship despite the formal documentation identifying Dorsey as the Tribe's attorney on the Project and the fact that Dorsey never billed Plaintiff for work done specifically for  Plaintiff (as opposed to work done for the Tribe on the Project).  First,  the fact that Dorsey was documented as the Tribe's

1 official attorney does not rule out the possibility that it also acted as Plaintiff's *de facto*
2 attorney.  Second, the billing records submitted by Plaintiff may support the conclusion that
3 Dorsey attorneys simply billed legal services provided to Plaintiff as work done for the Tribe
4 on the Project.  Plaintiff submits evidence of billing entries for Dorsey advising Plaintiff on its
5 business plan and for numerous other private communications between Dorsey and Celani
6 or Oegema. (Pl. NOL Ex.18 p.434; NOL Ex. 23, p.563,582, 610, 611, 632, 675, 676)  From
7 the evidence provided, a reasonable juror could conclude that this inaccurate billing practice
8 was the course of dealing ratified by the Plaintiff and Dorsey because Plaintiff was paying for
9 all the legal services provided by Dorsey to the Tribe in any case.

10 For the reasons set forth above, the Court concludes that Plaintiff has raised a triable
11 issue of fact regarding whether Dorsey and attorneys working for Dorsey had a joint
12 representation relationship with Plaintiff during the time period after the execution of the
13 Project Agreements.  The Court therefore DENIES Defendants' motion for summary
14 judgment on Plaintiff's professional negligence and breach of fiduciary duty claims insofar
15 as these claims are based on events occurring after the execution of the Project Agreements.

17 C.    <u>Plaintiff's Claims for Professional Negligence and Breach of Fiduciary Duty Against Baker-Shenk are Time-Barred</u>

Defendants Baker-Shenk and Holland, the law firm that Baker-Shenk joined on September 13, 2003, argue that Plaintiff's claims for professional negligence and breach of fiduciary duty against them are time-barred.  The Court agrees. Baker-Shenk and Holland unequivocally ceased to represent Plaintiff as of December 2003.  Any claims for injury arising prior to that date are barred by the statute of limitations.

California Code of Civil Procedure Section 340.6 provides that:

> An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first.

28 This time period is tolled if the "attorney continues to represent the plaintiff regarding the

specific subject matter in which the alleged wrongful act or omission occurred." § 340.6(a)(2).

Because Plaintiff's cause of action for breach of fiduciary duty also essentially complains of the failure of its attorneys in advising and representing it, this claim is similarly governed by a one year statute of limitations. <u>Hydro-Mill Co., Inc. V. Hayward, Tilton and Rolapp Ins. Associates, Inc.</u>, 115 Cal. App. 4th 1145, 1153 (2004) ("To determine the statute of limitations which applies to a cause of action it is necessary to identify the nature of the cause of action, i.e., the "gravamen" of the cause of action.... [T]he nature of the right sued upon and not the form of action nor the relief demanded determines the applicability of the statute of limitations under our code.")

Defendants Baker-Shenk and Holland argue that Plaintiff's claims against them are time-barred because Plaintiff was aware of the fact that it suffered injury prior to July 2003 but did not bring its claims until December of 2006. Baker-Shenk and Holland point out that in July 2003, Plaintiff met with several Dorsey attorneys without Baker-Shenk and discussed the fact that the Project was not moving forward under Baker-Shenk's leadership and that his attempts to obtain regulatory approvals met with continued failure. (PNOL. Ex. 6 Oegema Depo. 258, 261) Therefore, Plaintiff was aware of its alleged injuries at least as of July 2003 if not before. Plaintiff does not oppose the proposition that it was aware of injuries suffered prior to July 2003 but, instead, argues that the statute of limitations should be tolled because Defendants Baker-Shenk and Holland continued to represent Plaintiff past July 2003.[6]

Contrary to Plaintiff's position, the continuing representation provisions of California Code of Civil Procedure section 340.6 do not apply because Baker-Shenk and Holland did

---

[6] Although Plaintiff appears to argues Baker-Shenk and Holland continued to breach their fiduciary duty beyond the July 23, 2003 date, it does not submit any evidence of a breach newly discovered after that date. It appears from Plaintiff's briefs that its claim for breach of fiduciary duty is based primarily on the alleged attorney-client relationship and the resulting dual representation of Plaintiff and the Tribe. Because Plaintiff provides no evidence of any independent ground upon which Baker-Shenk and Holland would continue to owe a fiduciary duty to Plaintiff after ceasing to represent it, the Court concludes that Plaintiff's claim for breach of fiduciary duty is time-barred along with its claim for professional negligence.

not represent Plaintiff after December 2003. On October 16, 2003, Baker-Shenk, now an attorney at Holland, sent Plaintiff an enagement letter "in connection with general counsel advice on Federal policy/legislation/litigation." (Plaintiff's NOL Ex. 39)  On December 1, 2003, Baker-Shenk wrote Plaintiff a letter confirming Celani's understanding that the Tribe had retained Baker-Shenk and Holland to represent it in the Project. (Plaintiff's NOL Ex. 40)  Because a Holland attorney had previously represented Plaintiff on the Project, Baker-Shenk requested a conflict waiver so that he may represent the Tribe with respect to the Project. (Id.)

Despite Plaintiff's argument to the contrary, the letter and attached conflict waiver evidence a clear understanding between the parties that Baker-Shenk and Holland would represent only the Tribe on matters related to the Project. First, Baker-Shenk specified in his cover letter that Holland "will not undertake in the future any specific representation of Luna Entertainment in gaming project matters that are related to those now or to be undertaken by the Tribe." (Id.) The body of the waiver makes clear that the source of the conflict to be waived was Holland's previous representation of Plaintiff rather than any continuing, joint representation of both the Tribe and Plaintiff with regard to the Project. (Id.) In fact, the conflict waiver clearly envisions Holland's future representation of Plaintiff only on matters *unrelated* to the joint development between the Plaintiff and the Tribe. (Id.) Plaintiff's interpretation that it was actually waiving the conflict stemming from continued joint representation of it and the Tribe by Baker-Shenk is, therefore, untenable.

Given the unequivocal communication from Baker-Shenk and Holland that they only represented the Tribe with regard to the Project, the Court finds that Plaintiffs could not reasonably have believed that these attorneys also represented the Plaintiff. The Court concludes that even if Baker-Shenk had represented Plaintiff while an attorney at Dorsey, he ceased to do so when he joined Holland and made clear to Plaintiff that he was not its attorney on or around December 1, 2003. The statute of limitations against Baker-Shenk and Dorsey, therefore, was tolled only to December 1, 2003 and expired a year later. Plaintiff's claims against Baker-Shenk and Dorsey for professional negligence and breach

of fiduciary duty are therefore time-barred because its complaint was not filed until December 28, 2006. For the above reasons, the Court GRANTS summary judgment against Plaintiff in favor of Defendants Baker-Shenk and Holland on the professional negligence and breach of fiduciary duty causes of action.

D.  Negligent Misrepresentation

Defendants also seek summary judgment on Plaintiff's claim for negligent misrepresentation arguing, *inter alia*, that they cannot be liable to a non-client for negligent misrepresentations. The Court concluded, as set forth above, that Plaintiff was not represented by defendant attorneys prior to the Project Agreements and was not represented by Baker-Shenk and Holland after December 1, 2003. The Court further agrees with Defendants that Plaintiff could not have justifiably relied on *legal opinions* issued by the attorneys of a potentially adverse party with whom they were negotiating an arms-length contract. B.L.M. v. Sabo & Dietsch, 55 Cal. App. 4th 823, 838-39 (1997). The B.L.M. case however distinguishes between legal opinions and factual allegations made by attorneys to parties that they do not represent. See id. It appears to the Court that Defendants' alleged misrepresentations to Plaintiff regarding the gaming project could constitute a mixed bag of factual assertions, legal opinions and in some cases, even a combination of both.[7] (Complaint ¶ 31, 83) On the present state of the record and legal briefing, the Court cannot conclude that defendant attorneys did not make any factual allegations, as opposed to legal opinions, to Plaintiff during the time periods when they were not representing Plaintiff. The Court therefore DENIES summary judgment on the negligent misrepresentation claim for statements made prior to the Project Agreement and statements made after December 1, 2003 by Baker-Shenk and Holland.

Plaintiff further alleges that, even after inducing it to enter into the Project

---

[7] Because the Court cannot determine upon the present state of the record whether the alleged misrepresentations are factual assertions or legal opinions, it also declines to address at this time whether certain of these alleged misrepresentations are, if factual, true.

Agreements with the Tribe, defendant attorneys continued to make misrepresentations regarding the ease and speed with which Dorsey could obtain the needed regulatory approvals to implement the Project goals. (Complaint ¶ 82, 83)  Despite Defendants' arguments to the contrary, where an attorney-client relationship exists, expressions of professional opinion can be actionable even if they are not factual statements. See <u>Bily v. Arthur Young & Co.</u>, 3 Cal. 4th 370, 408 (1992) ("when a party possesses or holds itself out as possessing superior knowledge or special information or expertise regarding the subject matter and a plaintiff is so situated that it may reasonably rely on such supposed knowledge, information, or expertise, the defendant's representation may be treated as one of material fact.")  The Court concludes that because Plaintiff has raised an issue of fact as to whether Dorsey jointly represented Plaintiff after the Project Agreements were executed, Plaintiff has also raised an issue of fact whether Dorsey purported to have superior knowledge of the subject matter and whether Plaintiff reasonably relied on this knowledge. For these reasons, the Court DENIES Defendants' motion for summary judgment on the alleged negligent misrepresentations made to Plaintiff.

E.     <u>Liability for Events After September 2003</u>

Defendants request that the Court grant partial summary judgment on all claims to the extent that they are based on events occurring after September 2003.  Defendants point out that in September 2003, Plaintiff abandoned its original plan to build a casino on the SIHC owned land and started to pursue a joint venture with the Viejas tribe.  Defendants base their request for partial summary judgment on the grounds that Plaintiff does not allege any acts of  professional negligence, breach of fiduciary duty and misrepresentations after the date of September 2003.  Upon review of the complaint, the Court disagrees. It appears that the complaint is broadly phrased to encompass continuing acts of professional negligence, breach of fiduciary duty and misrepresentations through the period after September 2003. The Court therefore DENIES Defendants' motion for partial summary judgment to limit Plaintiff's claims to events occurring prior to September 2003.

**CONCLUSION**

For the reasons set forth above, the Court GRANTS IN PART AND DENIES IN PART Defendant Dorsey's Motion for Summary Judgment [Doc. No. 26] and GRANTS IN PART AND DENIES IN PART Defendant Holland's and Baker-Shenk's Motion for Summary Judgment [Doc. No. 40]. The Clerk shall enter judgment for Dorsey against plaintiff on the first and third causes of action insofar as they allege acts of professional negligence and breach of fiduciary duty prior to March 29, 2000, when the Project Agreements were executed. The clerk shall enter judgment for Baker-Shenk and Holland & Knight against Plaintiff on the first and third causes of action in their entirety. The Defendants' motions for summary judgment as to the second cause of action and in all other respects except as specified above are DENIED without prejudice.

IT IS SO ORDERED.

DATED: September 30, 2008

*Barry Ted Moskowitz*

Honorable Barry Ted Moskowitz
United States District Judge