1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# SOUTHERN DISTRICT OF CALIFORNIA

10

11  LUNA GAMING - SAN DIEGO LLC, a      CASE NO. 06cv2804 BTM (WMC)
    Michigan Limited Liability Company,
12                                       **ORDER GRANTING IN PART AND**
                               Plaintiff, **DENYING IN PART DEFENDANTS'**
13      vs.                              **MOTION FOR SUMMARY**
                                         **JUDGMENT**
14  DORSEY & WHITNEY, LLP, HOLLAND
    & KNIGHT, LLP, BLEDSOE DOWNES &
15  ROSIER, P.C., PHILIP M. BAKER-
    SHENK, AND BRADLEY GRANT
16  BLEDSOE DOWNES, jointly and
    severally,
17
                              Defendant.
18

19

20      In this case, Plaintiff Luna Gaming-San Diego, LLC ("Luna Gaming")[1] filed suit against

21  various law firms and attorneys alleging causes of action for professional negligence,

22  negligent misrepresentation, and breach of fiduciary duty.  Defendant Bradley Grant Bledsoe

23  Downes ("Downes"), an attorney formerly with the Dorsey & Whitney law firm, and his current

24  firm, Defendant Bledsoe Downes & Rosier ("BDR") (together, "Defendants"), now move for

25  summary judgment on these claims.  Defendants argue that because they did not share an

26  attorney-client relationship with Plaintiff, Plaintiff's professional negligence and breach of

27  _____
        [1]      Luna Gaming originally went by the name "Action Gaming."  Thomas Celani,
28  the owner of Action Gaming, changed the entity's name to Luna Gaming-San Diego, LLC on
    June 29, 2001.  Throughout this motion, the Court will refer to this gaming entity as Luna
    Gaming.

1    fiduciary duty claims necessarily must fail.  Defendants further argue that Plaintiffs should

2    be estopped from claiming such an attorney-client relationship existed. Finally, Defendant

3    BDR claims that there is no causal link between its conduct and the damages alleged by

4    Plaintiff.

5

6    **I.  <u>FACTUAL BACKGROUND</u>**

7       In its September 30, 2008 Order granting in part and denying in part Defendants

8    Dorsey & Whitney ("Dorsey"), Holland & Knight ("Holland"), and Philip Baker-Shenk's

9    ("Baker-Shenk") motions for summary judgment [Docket No. 79], the Court described the

10    factual background of this case in detail.  The Court incorporates that factual background

11    here.  The Court only elaborates on facts newly introduced as part of the instant motion and

12    those which relate specifically to Downes or BDR.

13       Dorsey employed Downes, in different capacities, from August, 1999 to January,

14    2006.  (PNOL, Ex. 32 p.14:17–15:6.)  Although Downes was a Dorsey contract attorney at

15    the time, he was not involved in the preparation and execution of the "Project Agreements"

16    between the Tribe and Luna Gaming.  (DUF 8; DNOL, Ex. 12 p. 178:16–179:8.)  Downes

17    subsequently devoted approximately one-third of his time to the Project while practicing at

18    Dorsey.  (PNOL, Ex. 32 518:12–14.)  Downes formed BDR with Philip Rosier in January,

19    2006.  (Downes Decl. ¶ 5.)  Downes continued, however, to send communications to the

20    Tribe on Dorsey letterhead throughout 2006 and into 2007.  (PNOL, Ex. 38 p. 573–593.)

21    After the firm's formation, BDR also represented the Tribe in connection with the Project.

22    (Downes Decl. ¶¶ 6–7.)  BDR entered into a written retainer agreement with the Tribe and

23    Downes served as the primary billing partner on the representation.  (Id.)  Plaintiff does not

24    dispute that it never executed a written retainer or engagement letter with BDR.  (DUF 54.)

25    In accordance with the Project Agreements, however, Plaintiff paid for the work on the

26    Project that BDR performed for the Tribe.  (Downes Decl. ¶ 7.)

27    ///

28    ///

## II.  DISCUSSION

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment when there is no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law.  A "genuine issue" is one where, based on the evidence presented, a fair minded jury could return a verdict in favor of the nonmoving party on the issue in question.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In considering a motion for summary judgment, the Court must examine all of the evidence in the light most favorable to the non-moving party.  United States v. Diebold. Inc., 369 U.S. 654, 655 (1962).

Defendants Downes and BDR ("Defendants") request summary judgment on Plaintiff's claims for professional negligence, negligent misrepresentation, and breach of fiduciary duty on three grounds.  First, Defendants argue that because Plaintiff cannot establish the existence of an attorney-client relationship with Downes or BDR, they owed no duty to Plaintiff and its claims must fail.  Second, Defendants argue that Plaintiff should be estopped from claiming that an attorney-client relationship existed with Downes or BDR because of representations and omissions that Plaintiff made to third parties indicating that Defendants represented solely the Tribe.  Third, Defendants argue that there is no causal link between Plaintiff's claim for damages and BDR's conduct, since it did not come into existence  until after the alleged misconduct took place.

A. Downes Did Not Represent Plaintiff Prior to the Project Agreements

In its earlier Order on Defendants Dorsey, Holland, and Baker-Shenk's motions for summary judgment, the Court analyzed separately whether an attorney-client relationship existed prior to the Project Agreements and after their execution.  The same bifurcation of analysis is appropriate here.  The Court concludes that Plaintiff has failed to raise a triable issue of fact as to whether Downes represented it before the Project Agreements were executed.

The Court already granted summary judgment in favor of Dorsey on Plaintiff's claims

1    for professional negligence and breach of fiduciary duty to the extent that they were based

2    on events prior to the execution of the Project Agreements on March 29, 2000.[2] Plaintiff also

3    does not dispute that Downes, a contract attorney for Dorsey at the time, was not involved

4    in any of the discussions, negotiations, or preparation preceding the Agreements. (PUF 52.)

5    Therefore, Downes engaged in no contact at all which would suggest that an attorney-client

6    relationship existed with Plaintiff prior to the Project Agreements' execution on March 29,

7    2000.  Because the Court finds that no attorney-client relationship existed between Downes

8    and Plaintiff before the Project Agreements were executed, the Court **GRANTS** partial

9    summary judgment in favor of Downes on Plaintiff's claims for professional negligence and

10   breach of fiduciary duty to the extent that they are based on events before March 29, 2000.

11        Unlike Dorsey itself, since Downes had no contact at all with Plaintiff preceding the

12   execution of the Project Agreements, he did not make any statements during that time period

13   out of which Plaintiff's negligent misrepresentation claim could arise.  The Court concludes

14   that no triable issue of fact exists regarding Plaintiff's negligent  misrepresentation claim

15   against Downes to the extent that it is based on events prior to the Project Agreements'

16   execution.   Thus, the Court **GRANTS** partial summary judgment in favor of Downes on

17   Plaintiff's negligent misrepresentation claim to the extent that it is based on events occurring

18   before March 29, 2000.

19

20   B.  Downes's Representation of Plaintiff Project While Employed at Dorsey

21        As set forth above, the Court finds that there is no genuine issue of material fact

22   _____

23        [2] In its opposition to Defendants' Motion for Summary Judgment, Plaintiff argues that
     new evidence turned over by Dorsey suggests that an attorney-client relationship did in fact
24   exist between itself and the firm prior to March 29, 2000.  (Pl. Res. to Def. MSJ 13.)  The
     Court did not have this evidence to consider, however, when it ruled on Dorsey's motion for
25   summary judgment on September 30, 2008.  Even if the Court were to reconsider its earlier
     order, partial summary judgment in favor of Downes would remain appropriate here.  Plaintiff
26   agrees that Downes did no work related to formation of the Project Agreements. (PUF 52.)
     Generally, an innocent agent will not be held liable for his principal's tort.  B.E. Witkin,
27   <u>Agency and Employment</u>, 3 Wit. Sum.§ 201 (10th ed. 2005); *see also* <u>Mars v. Wedbush
     Morgan Securities, Inc.</u>, 231 Cal. App. 3d 1608, 1616 (1991).  Thus, because Downes was
28   merely a Dorsey contract attorney at the time and uninvolved with any work preparing the
     Project Agreements, he cannot be held liable for events prior to March 29, 2000.

1  regarding whether Downes represented Plaintiff before the parties executed the Project

2  Agreements.   Plaintiff has raised an issue of fact, however, as to whether Downes

3  represented it after execution of the Project Agreements.

4      An attorney-client relationship may be created by express or implied contract. Fox v.

5  Pollack, 181 Cal. App. 3d 954, 959 (1986).  Where a party claims a disputed contract was

6  implied, the existence of the attorney-client relationship is a question of law resolved through

7  an objective test. Sky Valley Ltd. Partnership v. ATX Sky Valley, Ltd., 150 F.R.D. 648, 652

8  (N.D. Cal. 1993). Courts focus on whether it would have been reasonable, taking into

9  account all of the relevant circumstances, for the person claiming the attorney-client

10  relationship existed to have believed that she was in fact a "client" of the lawyer. Id. at 651.

11   In assessing the reasonableness of a party's belief, courts consider many factors, including

12  (1) the conduct of the party and counsel, (2) whether the party paid or was obligated to pay

13  counsel for his services, (3) the relative sophistication of the party, (4) the magnitude of the

14  interests involved, and (5) whether the party consulted or had access to other lawyers during

15  the time period in question.  Id. at 652.

16      Courts consider additional factors when a party claims that it was jointly represented

17  along with an attorney's undisputed client. In the joint representation context, courts evaluate

18  carefully the relationship between the two allegedly represented parties, analyzing such

19  factors as: (1) the conduct of the parties towards one another, (2) the terms of any

20  contractual relationship between the two parties, (3) whether and to what extent there was

21  separate and private communication between the attorney and either of the allegedly

22  represented parties, (4) the extent of common interests between the allegedly jointly

23  represented parties, and (5) the extent to which either party communicated privately with

24  other lawyers. Sky Valley, 150 F.R.D. at 652–653.  Mere dispensing of legal advice is not

25  sufficient to create an attorney-client relationship where a party claims joint representation.

26  Id. at 651.

27      The Court noted in its previous order denying summary judgment as to Defendant

28  Dorsey that the cooperative nature of the Project and the requisite sharing of legal and

1  confidential information between Plaintiff and the Tribe's lawyers would not necessarily

2  establish an attorney-client relationship.  Nevertheless, the Court concludes here that a

3  material issue of fact exists as to whether Plaintiff reasonably believed that Downes

4  represented it jointly with the Tribe following the execution of the Project Agreements.

5  First, Downes, like other Dorsey attorneys, provided legal advice that Plaintiff's

6  evidence may establish was specifically for its own benefit and not required or envisioned by

7  the Project Agreements.  For example, it appears Downes: (1) assisted Plaintiff in obtaining

8  licenses (PNOL, Ex. 4 p. 86, 101, 104, 108); (2) advised Plaintiff on its business plan (PNOL,

9  Ex. 4 p. 109); (3) provided Plaintiff with resources regarding legal constraints on political

10  contributions (PNOL, Ex. 4 p. 81); and (4) aided Plaintiff in contacting potential financial

11  partners for the Project (PNOL, Ex. 15 p. 273).

12  Second, Downes specifically recommended in an email that Dorsey attorneys and

13  Plaintiff discuss legislation potentially affecting the Project "in a protected attorney-client

14  manner before any further action [was] taken."  (PNOL, Ex. 24 p.486.)  Downes also

15  communicated confidentially with Plaintiff, separately from the Tribe, when he attended the

16  Las Vegas meeting at which Plaintiff and Dorsey attorneys discussed political lobbying efforts

17  and a potential financial partner for Plaintiff.  (PNOL, Ex. 3 p. 59–63.)  Downes himself

18  appears to have been responsible for relaying decisions made by Dorsey and Plaintiff

19  together at this meeting later to the Tribe.  (PNOL, Ex. 3 p. 63:16–21.)  Based on these

20  communications, a jury could find that it was reasonable for Plaintiff to believe it was a client

21  of Downes.

22  The Court thus concludes that a triable issue of fact exists as to whether Downes and

23  Plaintiff had an attorney-client relationship after execution of the Project Agreements on

24  March 29, 2000 and during his employment with Dorsey.

25

26  C.    Equitable Estoppel

27  Defendants' alternative argument, that Plaintiff should be estopped from claiming an

28  attorney-client relationship existed between the parties, is unpersuasive.  The doctrine of

6

08cv2804 BTM (WMC)

equitable estoppel "provides that a person may not deny the existence of a state of facts if he intentionally led another to believe a particular circumstance to be true and to rely upon such belief to his detriment." Strong v. County of Santa Cruz, 15 Cal. 3d 720, 725 (1975). Four elements must be satisfied for equitable estoppel to apply: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the party claiming estoppel must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury. Id.

Defendants base their estoppel argument on several representations to third parties. First, Defendants rely upon provisions of the Project Agreements, which were submitted to the National Indian Gaming Commission ("NIGC") for approval by the Chairman. These provisions indicated that the parties were not joint venturers of one another and promised compliance with the Indian Gaming Regulatory Act of 1988 ("IGRA"). Defendants correctly note that the Agreements claimed that the parties were not engaged in a joint venture. (DNOL, Ex. 23 ¶ 9.4.) Downes has not shown, however, that he was ignorant of the true state of facts, namely, that he represented Plaintiff jointly with the Tribe. Rather, his conduct as elaborated above demonstrates that a triable issue of fact exists as to whether Downes actually jointly represented Plaintiff despite the language of the Agreements.

The provision of the Project Agreements promising compliance with the IGRA likewise fails as a basis for Defendants' equitable estoppel defense. Defendants point to no provision of the IGRA specifically prohibiting joint representation of tribes and management contractors. Reliance by a party claiming estoppel must have been reasonable under the circumstances. Mills v. Forestex Co., 108 Cal. App. 4th 625, 655 (2003). Here, it was not reasonable for Downes to rely on a general promise by Plaintiff to comply with the IGRA as proof that he did not jointly represent the Tribe and Plaintiff. Thus, Plaintiff is not estopped from claiming representation by Downes merely on the basis of statements to the NIGC in the Project Agreements.

Second, Downes asserts estoppel based on the response Dorsey submitted to the

1  NIGC's October, 2002 request for additional information to assist in the approval process for

2  the Project Agreements.  This response, submitted by Downes, separately listed attorneys

3  for the Tribe and Plaintiff, with Dorsey & Whitney clearly identified as counsel for the Tribe

4  but not Plaintiff.  (DNOL, Ex. 59 p. 348.)  Plaintiff, through its general counsel Jim Oegema,

5  agreed that the response was accurate, though it never made any representations regarding

6  counsel for the two parties directly to the NIGC itself.  (DNOL, Ex. 59 p. 338–341.)  Again,

7  Downes was aware of his own conduct regardless of these representations to the NIGC.

8  Because a triable issue of fact exists as to whether Downes actually represented Plaintiff,

9  Plaintiff should not be estopped from its claim solely based on representations to the NIGC,

10  by Downes himself, that suggested otherwise.

11       The Court therefore rejects Defendants' equitable estoppel argument.  Because

12  Plaintiff has raised an issue of fact as to whether Downes jointly represented Plaintiff after

13  execution of the Project Agreements, the Court **DENIES** in part Downes's Motion for

14  Summary Judgment on Plaintiff's professional negligence and breach of fiduciary duty claims

15  to the extent that they are based on events after March 29, 2000 and before Downes formed

16  BDR.

17

18  D.    Negligent Misrepresentation

19       Downes also argues that Plaintiff has failed to present any evidence that he made

20  statements upon which Plaintiff's negligent misrepresentation claim could be based.  The

21  Court disagrees.   In its Complaint, Plaintiff alleged that all Defendants made

22  misrepresentations "to encourage and induce Plaintiff to continue to pursue its joint venture

23  gaming project."  (Compl. ¶ 82.)  Specifically, Plaintiff claimed that Defendants made "false

24  statements of material fact, relating to, among other things, the ease and speed with which

25  the Defendants could address and resolve the regulatory and legal hurdles to establishing

26  the joint venture gaming project on Plaintiff's behalf."  (Compl. ¶ 83.)

27       As noted above, Downes communicated with Plaintiff often throughout the course of

28  the Project, at times confidentially.  Where an attorney-client relationship exists, expressions

1   of professional opinion may be actionable even if they are not factual statements.  See Bily

2   v. Arthur Young & Co., 3 Cal. 4th 370, 408 (1992) ("when a party possesses or holds itself

3   out as possessing superior knowledge or special information or expertise regarding the

4   subject matter and a plaintiff is so situated that it may reasonably rely on such supposed

5   knowledge, information, or expertise, the defendant's representation may be treated as one

6   of material fact.")  The Court finds that because Plaintiff has raised an issue of fact as to

7   whether Downes jointly represented Plaintiff after the Project Agreements were executed and

8   while he was employed at Dorsey, Plaintiff has also raised an issue of fact regarding whether

9   Downes purported to have superior knowledge of the subject matter and whether Plaintiff

10  relied on this knowledge.

11      Because a triable issue of fact exists as to whether Downes jointly represented

12  Plaintiff and the Tribe following execution of the Project Agreements and during his

13  employment with Dorsey, the Court **DENIES** in part Downes's motion for summary judgment

14  on Plaintiff's negligent misrepresentation claim, insofar as it is based on events during this

15  time period.

16

17  E.   Bledsoe Downes & Rosier's Representation of Plaintiff

18      BDR argues that because an attorney-client relationship never existed between itself

19  and Plaintiff, summary judgment should be granted in its favor on all three of Plaintiff's

20  claims.   The Court agrees for the following reasons.

21      The Court must again consider the Sky Valley factors to determine whether it would

22  have been reasonable for Plaintiff to believe that BDR jointly represented both it and the

23  Tribe.  Downes and his partner Ronald Rosier did not form BDR until January, 2006, several

24  years after the parties executed the initial Project Agreements.  (Downes Decl. ¶ 5.)  Plaintiff

25  filed the Complaint in this case on December 28, 2006.  Plaintiff broadly alleges that Downes

26  continued to act in the same role for Plaintiff at BDR as he had at Dorsey.  Plaintiff claims

27  that the manner and method of communication with Downes was the same, the type of legal

28  services Downes performed was the same, and its interaction with Downes was the same.

9

1   Plaintiff does not offer sufficient evidence, however, to support these assertions.

2       Plaintiff includes in the record several email communications between Oegema and

3   Downes following the formation of BDR.  None of these communications suggest that BDR

4   gave legal advice solely for Plaintiff's benefit and not as required for the joint venture.

5   Rather, in these email exchanges, Oegema and Downes appear to disagree on several

6   points, with Oegema representing the interests of Plaintiff and Downes representing the

7   interests of the Tribe.  For instance, Oegema promotes the sale of the Walker property while

8   Downes opposes it.  (PNOL, Ex. 38 p. 595–596.)  Oegema  advocates the sale to recoup

9   costs for Celani, but Downes appears concerned that the sale would risk a breach of the

10  contract with Viejas by the Tribe.  (Id.)  Plaintiff could not reasonably believe that these email

11  communications, in which Downes clearly represents the Tribe's interests as opposed to

12  Celani's, established an attorney-client relationship.

13      Plaintiff also cites several confidential memoranda[3] circulated by Downes after the

14  formation of BDR as evidence that BDR represented Plaintiff.  (PNOL, Ex. 38 p. 573–593.)

15  These memoranda, however, appear to offer legal analysis related only to moving the joint

16  venture with Viejas forward.  They do not give legal advice specifically for Plaintiff's benefit.

17  Merely offering legal advice is not sufficient to create an attorney-client relationship where

18  a party claims joint representation.  Sky Valley, 150 F.R.D. at 651.   In light of the significant

19  common interests of Plaintiff and the Tribe, it was not reasonable for Plaintiff, a sophisticated

20  party, to believe that these documents alone established an attorney-client relationship with

21  BDR.

22      Furthermore, unlike the Dorsey payment invoices, the BDR "Statement of Services"

23  does not indicate any work done by Downes solely for Plaintiff's benefit.  (See PNOL Ex. 38

24  p.602–604.)  Rather, the Statement of Services appears to reflect work done only for the

25  Tribe.  Although Downes admitted that Plaintiff paid the expenses listed on the Statement of

26

27      [3] Two memoranda appear to have been first electronically transmitted on Dec. 21,
    2006, and later re-transmitted on Jan. 10, 2007. (See PNOL Ex. 38 573–577, 581–585
28  ("Transfer of Viejas Trust Lands for Gaming"), Ex. 38 p. 378–380, 391–393 ("Remaining Fee
    to Trust Application Steps & NEPA Issues")).   The memoranda appear substantively
    identical.

1   Services in accordance with the Project Agreements (Downes Decl. ¶ 7.), the mere payment

2   of attorneys' fees will not necessarily establish an attorney-client relationship. <u>Zenith Ins. Co.</u>

3   <u>V. Cozen O'Connor</u>, 148 Cal. App. 4th 998, 1010 (2007).  The Court therefore concludes that

4   no reasonable jury could find that an attorney-client relationship existed between Plaintiff and

5   BDR.

6          Finally, the Court notes that Plaintiff cites no legal authority to support the contention

7   that BDR may be held liable for Downes' actions prior to its formation.  All of the negligent

8   conduct Plaintiff complains of took place before BDR came into existence.  Plaintiff alleges

9   that all Defendants failed to properly investigate the regulatory approvals necessary to

10  advance the Project and misrepresented the ease which with those approvals could be

11  obtained after the Project Agreement was executed.  However, these allegations all concern

12  actions by the other Defendants well before BDR came into existence.  As a result, no

13  reasonable jury could find BDR liable based on Plaintiff's professional negligence and breach

14  of fiduciary duty claims.  The Court thus **GRANTS** summary judgment in favor of BDR on

15  Plaintiff's professional negligence and breach of fiduciary duty claims.

16         Courts have allowed limited recovery by a third party non-client against an attorney

17  under a negligent misrepresentation theory in cases where the third party alleges

18  misrepresentation of fact rather than legal opinion. <u>B.L.M. v. Sabo & Deitsch</u>, 55 Cal. App.

19  4th 823, 839 (1997).  Plaintiff's negligent misrepresentation claim against BDR is based on

20  alleged "false statements of material fact, relating to, among other things, the ease and

21  speed with which the Defendants could address and resolve the regulatory and legal hurdles

22  to establishing the joint venture gaming project on Plaintiff's behalf."  (Compl. ¶ 83.)  After

23  examining all the evidence presented in the light most favorable to Plaintiff, the Court

24  concludes that no fair-minded jury could find in favor of Plaintiff on its negligent

25  misrepresentation claim against BDR.

26         Plaintiff fails to cite any specific factual statements made by Downes while at BDR in

27  support of its negligent misrepresentation claim.  Moreover, BDR was formed almost six

28  years after Plaintiff and the Tribe executed the original Project Agreements, and three years

after they agreed to pursue an alternative project with Viejas.  Based on the lack of evidence

showing that Plaintiff did, in fact, rely on any factual representations made by Downes, while at BDR, to continue to honor its obligations under the Project Agreements, the Court finds that there is no triable issue of fact on Plaintiff's negligent misrepresentation claim against BDR.   The Court therefore **GRANTS** summary judgment in favor of BDR on Plaintiff's negligent misrepresentation claim.

Because no liability exists on the part of BDR, likewise no reasonable jury could find Downes himself liable for any actions he took after forming BDR.   The Court therefore also **GRANTS** partial summary judgment in favor of Downes on all three of Plaintiff's claims, to the extent that they are based on events after BDR came into existence.

### III.  CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** Defendants Bradley Grant Bledsoe Downes and Bledsoe Downes & Rosier's Motion for Summary Judgment [Doc. 76].  The Clerk shall enter judgment for Downes against Plaintiff on the first, second, and third causes of action insofar as they allege acts of professional negligence, negligent misrepresentation, and breach of fiduciary duty taking place before March 29, 2000, when the parties executed the Project Agreements, and after the formation of BDR in January, 2006.  The Defendants' Motion for Summary Judgment on the first, second, and third causes of action as they otherwise apply to Downes is **DENIED** without prejudice.  The Clerk shall enter judgment for BDR on the first, second, and third causes of action in their entirety.

**IT IS SO ORDERED.**

DATED:  March 6, 2009

Honorable Barry Ted Moskowitz
United States District Judge

12

08cv2804 BTM (WMC)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

08cv2804 BTM (WMC)