# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUNA GAMING — SAN DIEGO, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> DORSEY & WHITNEY, LLP, et al., <br><br> Defendants. | CASE NO. 06cv2804 BTM (WMc) <br><br> **ORDER SUSTAINING IN PART AND OVERRULING IN PART OBJECTIONS TO MAGISTRATE JUDGE'S ORDER RE INADVERTENT DISCLOSURE** |

Defendant Dorsey & Whitney, LLP has objected to the Magistrate Judge's June 3, 2009 Order Regarding Inadvertent Disclosure [Doc. 180.] For the following reasons, the Court **SUSTAINS in part** and **OVERRULES in part** the objections.

## I. BACKGROUND

**1. The Four Privileged Documents at Issue**

There are four privileged documents at issue here, all of which Luna Gaming produced to Dorsey. These privileged documents arise from Luna Gaming's retention of the law firm Akin Gump Strauss Hauer & Feld LLP. Luna Gaming retained Akin Gump for its opinion regarding the suitability of certain Indian lands for gaming. These are the same Indian lands related to the underlying dispute between Luna Gaming and Dorsey.

The four documents are (1) a November 7, 2002 retainer agreement from Akin Gump ("Retainer Agreement"); (2) a letter effecting the retainer agreement from Linda Pierce of Akin Gump ("Retention Letter"); (3) a legal memorandum from Akin Gump dated December 2002 ("2002 Memo"); and (4) another legal memorandum from Akin Gump dated August 2003 ("2003 Memo") (collectively the "Privileged Documents"). Of these four documents, only two of the documents—the Retainer Agreement and the 2003 Memo—were used at depositions or in court filings. The other two documents were never used by any party, but are related by subject matter.

Luna Gaming and Dorsey entered into a Protective Order, which outlines procedures for resolving certain disputes regarding inadvertently produced privileged documents. (See August 27, 2007 Protective Order, Doc. 20.) Both parties and the magistrate judge signed the Protective Order. (See id.)

**2. Dorsey Used the Privileged Documents at Depositions**

Luna Gaming produced the Privileged Documents in August 2007. The next month, on September 25, 2007, Dorsey's counsel deposed Donald Buch. Dorsey's counsel designated one of the privileged documents—the 2003 Memo—as an exhibit, and asked Mr. Buch to review it before asking three foundational questions. (Noonan Decl., Ex. AA, Tab 8, 112:10–113:8.) This took nearly two minutes, and it appears that Luna's counsel also received a copy of the privileged 2003 Memo. (Notice of Lodg. Ex. KK, video excerpt from Buch deposition.)

Luna Gaming's counsel did not object to the use of the privileged document or ask for its return. (Noonan Decl., Ex. AA, Tab 8, 112:10–113:8.)

At the deposition of Thomas Celani on November 14, 2007, Dorsey's counsel used and marked as exhibits both the 2003 Memo and the Retainer Agreement. When Dorsey's counsel introduced the Retainer Agreement, this time Luna's counsel objected and invoked the claw-back provision. (Noonan Decl., Ex. AA, Tab 10, 537:22–543:5.) Dorsey's counsel resisted, arguing that the privilege had been waived with respect to all Akin Gump documents

because Luna's counsel failed to object to their use at the Buch deposition.  (Id. at 538:24–539:3.)  Luna's counsel maintained that the documents were privileged, but nevertheless permitted questioning regarding the Retainer Agreement.  (Id. at 537:22–540:25.)  Dorsey's counsel then introduced the 2003 Memo (the same memo used at the Buch deposition two months before), but Luna's counsel did not specifically object to this document and permitted questioning.  (Id. at 541:3–543:5.)

The next day, Dorsey again used the 2003 Memo and the Retainer Agreement at the deposition of James Oegema.  Luna's counsel objected and invoked the claw-back provision. (Noonan Decl., Ex. AA, Tab 11, 459:4–467:1.)

The Privileged Documents were not used at any further depositions.  And there were no followup discussions between counsel about their return.

**3. The Privileged Documents in the Summary Judgment Motions**

Dorsey lodged the 2003 Memo and the Retainer Agreement in support of its motion for summary judgment filed on December 11, 2007.  (Noonan Decl., Ex. AA, Tab 2, at 47–57.)  In its brief, Dorsey cited the privileged documents, arguing that Luna Gaming's retention of other firms weighed against Luna Gaming reasonably believing that Dorsey represented it.  (See Chapin Decl., Ex. A at 9, n.2.)  Luna countered by stating that it retained Akin Gump only for a second opinion regarding the legal advice it received from Dorsey. (Noonan Decl., Ex. AA, at 90.)

In its order on the motions for summary judgment, the Court cited a Luna Gaming declaration.  The declaration, which cited the 2003 Memo, stated that Luna Gaming retained Akin Gump to get a second opinion regarding the eligibility of tribal lands for gaming.

In Dorsey's second motion for summary judgment, Dorsey again lodged the 2003 Memo and the Retainer Agreement.  (Noonan Decl., Ex. AA, Tab 12, at 524–28.)  Luna Gaming submitted another declaration stating that it retained Akin Gump primarily to get a second opinion regarding the eligibility of tribal lands for gaming.  (Noonan Decl., Ex. AA, //

Tab 13, at ¶ 23.)

Luna did not object on the basis of privilege to Dorsey's use of the two Privileged Documents in either the first or second summary judgment motions.

**4. The Magistrate Judge's Order**

The parties disputed whether the privilege had been waived with respect to the four Privileged Documents. The magistrate judge ruled that although the Privileged Documents had been inadvertently produced, the privilege had *not* been waived.

The magistrate judge based his conclusion on several factors. First, he found that despite Luna's counsel's failure to object to the Privileged Documents' use at the Buch deposition, the questions were merely foundational and did not delve into the substance of the documents sufficiently to waive the privilege. Second, he found that although Luna's counsel should have objected and invoked the Protective Order sooner, once Luna eventually did object, Dorsey should have immediately returned the documents. The magistrate judge concluded that Dorsey's failure to return the documents after Luna's objection was a violation of the Protective Order. In addition, the magistrate judge noted that "[a]lthough criticism is properly leveled at both parties, Defendants' conduct is more culpable because the Protective Order required Defendants to seek a judicial determination of waiver *before* they filed their motions for summary judgment in partial reliance on the retainer agreement and the Akin Gump memorandum." (June 6, 2009 Order Re: Inadvertent Disclosure 9–10.)

Finding Dorsey's conduct more culpable than Luna's, the magistrate judge ruled that the privilege was intact. He ordered Dorsey to return the Privileged Documents and prohibited Dorsey from using them for the remainder of the case.

**II. LEGAL STANDARD**

Parties may file timely objections to a magistrate judge's order for non-dispositive, pretrial matters. Fed. R. Civ. P. 72(a). Upon review of the order, the district court must

"modify or set aside any part of the order that is clearly erroneous or is contrary to law." Id. There is clear error when the district court is "left with the definite and firm conviction that a mistake has been committed." See Easley v. Cromartie, 532 U.S. 234, 242 (2001). A decision is contrary to law if it fails to apply or misapplies relevant statutes, case law, or rules of procedure. U.S. v. Cathcart, No. C 07-4762 PJH, 2009 WL 1764642, at *2 (N.D. Cal. June 18, 2009).

## III. DISCUSSION

Dorsey objects to the magistrate judge's ruling and argues that the magistrate judge made three errors: (1) the magistrate judge erred in finding that the production was inadvertent; (2) the magistrate judge erred in ruling that Luna had not waived the privilege; and (3) the magistrate judge erred in ruling that Dorsey violated the Protective Order. The Court addresses each of these contentions below.

**1. The magistrate judge did not clearly err in finding that the production was inadvertent**

The parties dispute whether production of the Privileged Documents was inadvertent. Federal Rule of Evidence 502(a) governs the inadvertent disclosure of privileged documents. Under that rule, inadvertence is one of three elements that must be satisfied to prevent waiver when a party produces privileged documents. Fed. R. Evid. 502(b). Rule 502(b) states that

> [w]hen made in a Federal proceeding . . . the disclosure does not operate as a waiver . . . if: (1) the disclosure is *inadvertent*; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Fed. R. Evid. 502(b) (emphasis added). Although the magistrate judge did not directly address whether the disclosure in this case was inadvertent, a finding of inadvertence was implicit in his order. (See Order Re: Inadvertent Disclosure, Doc. 172, 4:4–17.)

The magistrate judge's implicit finding of inadvertent production was not clearly

erroneous or contrary to law. Indeed, there is ample evidence that supports such a finding. Luna Gaming submitted to the magistrate judge declarations stating that the production of the privileged documents was inadvertent and unauthorized. (See Noonan Decl. Ex. DD, 589 ¶ 8; Noonan Decl. Ex. GG, 649 ¶¶ 3–6.) Moreover, Luna Gaming has consistently asserted, both in its declarations and during depositions, that the production was inadvertent. (See Noonan Decl. Ex. DD, 589 ¶ 8; Noonan Decl. Ex. CC, 496 ¶ 8, 513:15–23, 523:5–9, 527:8–16 .) These facts, set forth in the magistrate judge's order, are essentially unrebutted and support the finding that the Privileged Documents were produced inadvertently.

Dorsey argues, however, that because the Privileged Documents are relevant to contested issues in this case, and because Luna Gaming's counsel failed to object to their use during depositions and pre-trial filings, Luna Gaming must have produced them intentionally. But even though the documents may be relevant, that does not establish that they were produced intentionally. Indeed, most inadvertently produced privileged documents, which have been found using keyword-relevancy searches, are likely relevant to the issues in a case. Moreover, Luna Gaming's failure to object to the use of the Privileged Documents appears to be attributed to its counsel's oversight, not to purposefulness.

For these reasons, the Court declines to disturb the magistrate judge's finding that Luna inadvertently produced the documents.

**2. Luna Gaming failed to timely object to the use of the Privileged Documents**

Dorsey also objects to the magistrate judge's finding that Luna Gaming did not waive the privilege with respect to the Privileged Documents when Luna's counsel failed to object to their use at depositions and in court documents. The magistrate judge ruled that even though some of the Privileged Documents were used at a deposition without objection, the privilege was not waived. The magistrate judge's ruling, however, is contrary to the law.

//
//

A. <u>Luna Waived the Privilege as to the 2003 Memo by Failing to Object</u>

Luna Gaming argues that the Protective Order governs this dispute, and that Dorsey failed to comply with its procedures. But Dorsey argues that this dispute is outside the scope of the Protective Order, and that the Court should apply federal and state privilege law regarding waiver. Thus, as an initial matter, the Court must determine whether the Protective Order governs this dispute.

The Court holds that it does not. Although the Protective Order states that the inadvertent disclosure of privileged documents "shall not constitute a waiver of any privilege," it does not address under what circumstances failure to object to the use of inadvertently produced privileged documents waives the privilege, which is what the Court must resolve here. (<u>See</u> Protective Order, Doc. 20.) Furthermore, even if the Protective Order's provisions did apply to this dispute, Luna Gaming's repeated failures to object to the use of the Privileged Documents—which the Court discusses below—waived any protections it could have invoked under the Protective Order. Thus, the Court applies federal and California state law to resolve the question before it.

Federal Rule of Evidence 502(b) governs waiver of privilege in federal proceedings. The disclosure of a privileged document normally operates as a waiver unless three conditions are satisfied: "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder *promptly* took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)." Fed. R. Evid. 502(b) (emphasis added). Plaintiff has the burden of proving each element has been met. <u>See</u>, <u>e.g.</u>, <u>United States v. Sensient Colors, Inc.</u>, No. CV 07-1275, 2009 WL 2905474 (D.N.J. Sept. 9, 2009). In this case, only the third element of Rule 502(b) is at issue because the Court has affirmed the magistrate judge's finding regarding the first element, and second element is not disputed.

Rule 502(b)(3) requires that the holder of the privilege "promptly [take] reasonable steps to rectify the error . . . ." When the privilege holder objects immediately upon discovery of the inadvertent disclosure, 502(b)(3) is satisfied. <u>See</u>, <u>e.g.</u>, <u>Multiquip, Inc. v. Water</u>

Management Systems LLC, No. CV 08-403, 2009 WL 4261214, at *5 (D. Idaho November 23, 2009); Rhoades v. Young Women's Christian Ass'n of Greater Pittsburgh, No. CV 09-261, 2009 WL 3319820 (W.D. Pa. Oct. 14, 2009). But under both state and federal law, if a privileged document is used at a deposition, and the privilege holder fails to object immediately, the privilege is waived. Nguyen v. Excel Corp., 197 F.3d 200, 206 (5th Cir. 1999); Brandon v. D.R. Horton, Inc., No. CV 07-1256, 2008 WL 2096883, at *3 (S.D. Cal. May 16, 2008) (listing cases); Eden Isle Marina, Inc. v. United States, No. 07-127C, 2009 WL 2783031, at *27 (Fed. Cl. August 28, 2009); Crossroads Systems (Texas), Inc. v. Dot Hill Systems, Corp., No. A-09-CA-754, 2006 WL 1544621, at *1–3 (W.D. Tex. May 31, 2006); see also Clarke v. J.P. Morgan Chase & Co., No. CV 08-2400, 2009 WL 970940, at *6 (S.D.N.Y. April 10, 2009) (holding two-month delay in asserting privilege, including failure to assert privilege at a deposition, weighed in favor of finding waiver and describing cases in which waiver was found after delay ranging from six days to one month); Cal. Civ. Proc. § 2025.460(a) ("The protection of information from discovery on the ground that it is privileged . . . is waived unless a specific objection to its disclosure is timely made during the deposition."); Int'l Ins. Co. v. Montrose Chem. Corp., 231 Cal. App. 3d 1367, 1373 n.4 (1991); Cal. Evid. Code § 912. Failing to stop responses to questions at a deposition that elicit privileged information also waives the privilege. Nguyen, 197 F.3d at 207–08. Furthermore, any objections that are raised at a deposition must be directed to specific questions or documents. Id. at 206–07.

Here, Dorsey used the 2003 Memo at the deposition of Donald Buch. Counsel for Dorsey asked Buch to review the document and asked three questions about it—an exchange that lasted nearly two minutes. Luna's counsel neither objected nor asked for the return of the document. Based on the federal and state law cited above, and the Rule 502(b)(3) requirement that Luna promptly rectify inadvertent disclosure upon discovery, Luna's failure to object at the Buch deposition waived the privilege with respect to the 2003 Memo.

There are additional grounds for finding waiver of the 2003 Memo. First, about two

months after the Buch deposition Dorsey again used the 2003 Memo at the deposition of Thomas Celani. Although Luna had objected earlier in the deposition to the introduction of the Retainer Agreement, Luna's counsel did not object specifically to the 2003 Memo, and permitted questioning regarding the document. General objections are disfavored, and the failure to specifically object to the document and permit questioning regarding its substance waived the privilege. Nguyen, 197 F.3d at 206–08.

Second, Dorsey used the 2003 Memo in both of its summary judgment motions without objection on the basis of privilege. This also waived the privilege. See Preferred Care Partners Holding Corp., 258 F.R.D. at 700 (holding that privilege waived after party failed to object to document's use in motion); Fed. R. Evid. 502(b)(3).

And third, although Luna's counsel belatedly objected to the use of the 2003 Memo at the depositions of Celani and Oegema and invoked the claw-back provision, Luna's counsel never followed up with Dorsey's counsel to obtain the return of the documents, nor did Luna's counsel seek an order from the court. Under the circumstances, after Dorsey did not return the document soon after the request, Luna should have petitioned the court. *See* Fed. R. Evid. 502(b)(3) (requiring prompt and reasonable steps to rectify error). Failing to take affirmative steps to retrieve the document, beyond merely asking for it at depositions, also waives the privilege. LaSalle Bank Nat'l Ass'n v. Merrill Lynch Mortg. Lending, Inc., No. CV 04-5452, 2007 WL 2324292, at *5 (S.D.N.Y. Aug. 13, 2007) (privilege waived where counsel objected to e-mail as privileged during deposition, but did not ask for its return until a month later); see also Liz Claiborne v. Mademoiselle Knitwear, No. CV 96-2064, 1996 U.S. Dist. LEXIS 17094 (S.D.N.Y. Nov. 19, 1996) (privileged waived where return was requested one month after the disclosure was discovered). For all of these reasons, the magistrate judge's ruling was in error and Luna waived the privilege as to the 2003 Memo.

B. Luna Also Waived the Privilege as to the Remaining Three Privileged Documents

Luna has also waived the privilege with respect to the other three Privileged Documents. First, although Luna's counsel generally objected to the Retainer Agreement

when it was first introduced at the Celani deposition, Luna's counsel nevertheless permitted, without specific objections, questions and responses regarding the document. Nguyen, 197 F.3d at 206–08. This occurred again at the Oegema deposition. Furthermore, the Retainer Agreement was used in two summary judgment motions without objection on the basis of privilege, which, as described above, also waives the privilege.

But the most important factor that weighs in favor of waiver—and this applies to all the Privileged Documents—is that Dorsey's use of the 2003 Memo at the Buch deposition put Luna on notice that its document production was defective. Once the 2003 Memo was used at the Buch deposition, and several times thereafter, Luna Gaming should have taken prompt and diligent steps to reassess its document production. See Note to Fed. R. Evid. 502(b) ("The rule does not require the producing party to engage in a post-production review to determine whether any protected communication or information has been produced by mistake. But the rule does require the producing party to follow up on any obvious indications that a protected communication or information has been produced inadvertently."); United States v. Sensient Colors, Inc., No. CV 07-1275, 2009 WL 2905474, at *5–6 (D.N.J. Sept. 9, 2009) (holding that waiver occurred because party failed to promptly reassess its production after it learned of inadvertent disclosure); see Preferred Care Partners Holding Corp. v. Humana, Inc., 258 F.R.D. 684, 700 (S.D. Fla. 2009) ("In light of the fact that Humana was aware that it inadvertently produced a number of documents which it believed to contain privileged information, Humana had an obligation . . . to ensure that no additional privileged documents were divulged.").

Luna's failure to promptly reassess its production, not only after the Buch deposition but also after the privileged documents were used at subsequent depositions and in the summary judgment motions, waived the privilege with respect to the remaining unused Privileged Documents (the 2002 Memo and the Retainer Letter).

**3. The Magistrate Judge's Ruling That Dorsey Violated the Protective Order**

Dorsey also challenges the magistrate judge's ruling that Dorsey violated the

protective order. Dorsey argues that the finding of a violation supported the magistrate's broader ruling that the privilege had not been waived. Thus, given that the magistrate judge's broader ruling has been overruled, whether Dorsey violated the protective order is moot.

## IV. CONCLUSION

For the foregoing reasons, the Court **SUSTAINS in part** and **OVERRULES in part** Dorsey's Objections to the Magistrate Judge's June 3, 2009 Order Regarding Inadvertent Disclosure [Doc. 180.] The Court holds that Luna has waived the privilege with respect to the four Privileged Documents. Dorsey may use the Privileged Documents in any filings and during trial. The magistrate judge's order is affirmed in all other respects consistent with this order.

**IT IS SO ORDERED.**

DATED:  January 13, 2010

_____
Honorable Barry Ted Moskowitz
United States District Judge